United States District Court
Southern District of Texas
**ENTERED**
April 17, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CURTIS MADISON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-5701 |
| | § | |
| NIAGARA BOTTLING, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Curtis Madison sued his former employer Niagara Bottling, LLC for harassment and discrimination based on his race, disability, and sexual orientation under state and federal law. (Docket Entry No. 14). The amended complaint includes harrowing allegations of racial abuse by Niagara managers and employees. (*Id.* ¶¶ 11–24). Madison alleges that there was a hostile work environment at Niagara and that he was denied promotion opportunities because of his race. (*Id* ¶ 20). Madison also alleges that he suffered sexual harassment and discrimination. (*Id.* ¶ 24). Madison, a bisexual man who is HIV-positive, alleges that supervisory personnel and employees sent "'hot dog' emojis and GIFs in group messages directed at" him and that another supervisor refused "to use a forklift after" Madison because the supervisor "did not want to 'get cooties from him.'" (*Id.* ¶ 24(a)–(b)).

Niagara has moved to compel arbitration. (Docket Entry No. 12). Madison opposes the motion, arguing that (1) the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act bars arbitration of this case, (Docket Entry No. 15 at 6–16); and (2) he never signed the purported arbitration agreement, (*id.* at 17–29). Based on the pleadings, the motion, the record, and the applicable law, the court denies without prejudice the motion to compel arbitration.

(Docket Entry No. 12).  The plaintiff must amend his complaint by April 24, 2026; the defendant may renew its motion to compel arbitration; and the court will schedule a *Shattenkirk* hearing on the motion to compel arbitration if necessary.

## I.    Analysis

### A.    EFAA

The Federal Arbitration Act ("FAA") requires district courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute. 9 U.S.C. § 3.  The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401–02, creates exceptions to the FAA.  The EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  The EFAA defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  *Id.* § 401(4).  Because the EFAA makes predispute arbitration agreements unenforceable "with respect to a case," *id.* § 402(a), the EFAA bars a motion to arbitrate any claim within that case; the EFAA does not require courts to sever sexual-harassment or sexual-assault claims from the rest of the plaintiff's suit.  *See Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 385–86 (6th Cir. 2026) ("[W]e hold that [] where a plaintiff brings multiple claims in a single suit against a party with whom she has an otherwise-valid arbitration agreement, and one of those claims alleges a 'sexual assault dispute' or a 'sexual harassment dispute,' the EFAA renders the arbitration agreement unenforceable with respect to each of the claims that comprise her case.").

Importantly, federal and state discrimination law distinguishes claims of sexual harassment from claims of sex discrimination. *Stephens v. DFW LinQ Transp., Inc.*, No. 3:24-CV-00352-N, 2025 WL 1697537, at *3 (N.D. Tex. June 16, 2025). "The former involves unwelcome sexual advances or other verbal or physical conduct of a sexual nature, whereas the latter refers to discriminating against someone because of their protected characteristic." *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 425 (W.D. Tex. 2025) (cleaned up) (quoting *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020), *aff'd*, No. 20-2714, 2021 WL 6124314 (3d Cir. Dec. 28, 2021)). "Unwelcome sexual harassment can take several forms, including 'sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee.'" *Karamatic v. Peyton Res. Grp., L.P.*, 3:21-CV-02304-N, 2022 WL 2972222, at *2 (N.D. Tex. 2022) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir. 1986)).

Madison alleges two acts that fall within the scope of the EFAA: that he received a text message of a "hot dog emoji to mock him" and that another Niagara employee refused to use the forklift after him on account of his "cooties," which was a reference to his "sexual orientation and HIV-positive" status. (Docket Entry No. 14 ¶¶ 18, 24). The problem for Madison is that these allegations are not alone sufficient to "plausibly allege[] a Title VII sexual-harassment claim." *Bruce*, 168 F.4th at 380. Courts must first review whether the plaintiff adequately alleged a claim within the scope of the EFAA before denying a motion to compel arbitration. *See id.* at 376 ("[I]f the sexual harassment claim is subject to dismissal under Rule 12(b)(6), the remaining claims under the ADA will be subject to arbitration."); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 588 (S.D.N.Y. 2023) ("[W]ith the SAC's sexual harassment claims having been dismissed as implausible, the EFAA no longer has any bearing on this litigation.").

To prevail on a hostile-work-environment claim, "(1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to unwanted or unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to act promptly to address it." *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1003 (5th Cir. 2024) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719–20 (5th Cir. 1986)).[1]

To satisfy the fourth element of a hostile-work-environment claim, the sexual harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993)). Courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance," *Harris*, 510 U.S. at 23; and "whether the complained of conduct undermined the plaintiffs' workplace competence," *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998). Discrimination laws are not a "general civility code," and "'simple teasing,' offhand comments, and isolated

---

[1] Under Title VII and Section 21.051 of the Texas Commission on Human Rights Act, "a plaintiff can allege that her employer engaged in sex discrimination so pervasive that it constituted sexual harassment and created a hostile work environment." *Brown-Steffes v. Avis Budget Grp.*, Inc., No. 3:23-CV-1747-D, 2023 WL 6386510, at *3 (N.D. Tex. Sept. 29, 2023); *see Newbury v. City of Windcrest*, 991 F.3d 672, 675 (5th Cir. 2021) (recognizing that Title VII "forbids sexual harassment in the workplace as a form of sex discrimination"). Identical legal standards govern claims under both statutes. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012).

incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citations omitted).

Allegations of harassing comments that occurred "three or four times" over several months or an extended period generally do not create a hostile work environment, especially if there are no factual allegations that the "comments unreasonabl[y] interfered with [] work performance." *Vallee v. Gerry Lane Hummer-Saab, LLC*, No. CIV.A. 10-00765-BAJ, 2013 WL 1296680, at *8 (M.D. La. Mar. 28, 2013) (collecting cases); *see, e.g.*, *Thomas v. Link Staffing*, No. 4:17-CV-3902, 2019 WL 497617, at *7 (S.D. Tex. Jan. 8, 2019), *report and recommendation adopted*, No. CV H-17-3902, 2019 WL 480133 (S.D. Tex. Feb. 7, 2019); *Tucker v. Harris Cnty. Hosp. Dist.*, No. CV H-19-4408, 2020 WL 1659893, at *4 (S.D. Tex. Mar. 30, 2020); *Pleasant v. Kansas City S. Ry. Co.*, No. CV H-23-828, 2024 WL 5246880, at *3 (S.D. Tex. Dec. 30, 2024).  If a court is to rely on allegations of isolated instances, the complaint must include additional factual allegations suggesting the abuse was "much more frequent." *Bruce*, 168 F.4th at 379.

The current complaint does not do so.  The complaint includes allegations about two comments from two different people.  Madison does not identify when those comments took place, whether the two comments were close in time, whether the comments were related (and, if so, how), or how those comments affected Madison's work.  Madison's passing assertion that various unnamed supervisors and coworkers repeatedly posted hot-dog emojis is not clear enough.  *Cf. also id.* (relying on allegations of a few instances of abuse from one individual); *Andrassy v. Jan X-Ray Servs., Inc.*, No. CV 24-3913, 2025 WL 2577142, at *1 (S.D. Tex. Sept. 5, 2025) (relying on, among other allegations, two instances of unwanted flirtatious touching from the same company president).  That is especially so because the complaint includes no explanation of how the sexual harassment undermined Madison's workplace competence.  *See Butler*, 161 F.3d at 270.

For allegations about harassment over text messages, which may have occurred outside the workplace, plaintiffs must allege that "consequences" were felt "in the workplace." *Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 810 (W.D. Tex. 2022) (quoting *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008)), *aff'd sub nom. Arredondo v. Elwood Staffing Services, Inc.*, 81 F.4th 419 (5th Cir. 2023).  But other than a comment that he was fired because he did not "fit the culture"—which Madison at the same time claims is "pretextual" and false, (Docket Entry No. 14 ¶ 19)—Madison does not explain how the harassment interfered with his ability to do his job.

Because this issue arises within a motion to compel arbitration, the parties did not brief extensively whether Madison has plausibly alleged a sexual-harassment claim against Niagara. But for purposes of this motion, the two isolated comments, as alleged in the complaint, are insufficient to warrant holding unenforceable the parties' arbitration agreement.  Madison has leave to amend his complaint to allege adequately his sexual-harassment claim.  If he does so, then the EFAA will apply.

### B.    Contract Formation and Enforcement

Courts must resolve whether there is a valid, binding arbitration agreement between the parties.  *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016).  Madison argues that the arbitration agreement is not binding for two reasons: (1) because the agreement is invalid under *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002), and its progeny; and (2) because he never signed the arbitration agreement.  Madison's first argument fails but his second has some merit.

### 1.    Validity

Madison argues that the arbitration agreement is invalid because Niagara did not provide advance notice of the arbitration agreement and because the arbitration agreement is illusory under

*In re Halliburton*.  (Docket Entry No. 15 at 17–22).  These arguments are not applicable to the arbitration agreement in this case.

First, the advance-notice issue in *Halliburton* arises when an at-will employee receives a unilateral notice of a change in the terms or conditions of his employment and continues the employment under the at-will relationship.  *In re Halliburton*, 80 S.W.3d at 568–69.  This is not such a case of implicit acceptance or acceptance by acquiescence.  Madison allegedly signed a particular document containing an arbitration agreement.  (Docket Entry No. 12-1 at 6).

Second, the illusoriness issue in *Halliburton* arises when one party can unilaterally terminate the agreement to arbitrate.  Under Texas law, standalone arbitration agreements are valid as an exchange of mutually-binding promises to arbitrate disputes.  *See Nelson*, 815 F.3d at 193 ("[A] mutual agreement to arbitrate claims is sufficient consideration to support an arbitration agreement.").  An issue arises if one side can unilaterally terminate its promise to arbitrate; in that case, only one side is making an enforceable promise.  *See Lizalde v. Vista Quality Markets*, 746 F.3d 222, 225 (5th Cir. 2014) ("Where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate, however, the agreement understandably is illusory.").  This arbitration agreement does not present a one-sided promise.  There is no provision in the arbitration agreement, (Docket Entry No. 12-1), that allows Niagara to back out of arbitration.  If Madison wants to enforce the arbitration provision, he can so move, and the contract does not provide Niagara with a unique termination defense.

*Halliburton* does not apply to this arbitration agreement.

### 2.     Electronic Signature

The genuine dispute is whether Madison in fact signed the arbitration agreement on which Niagara relies.  Texas courts have established a nonsensically high bar to compelling arbitration

7

as a matter of law based on an electronic signature.  The party moving to compel arbitration must on the papers "conclusively establish" that the plaintiff signed electronically the document.  *Hous. ANUSA, LLC v. Shattenkirk*, 693 S.W.3d 513, 520 (Tex. App.—Houston [14th Dist.] 2023, no pet.).  The moving party can do so through the "security procedures" used in obtaining the electronic signature.  *Id.*

A few cases show how high the bar is.  In *Shattenkirk*, AutoNation provided an affidavit establishing that "all necessary onboarding paperwork was sent to Shattenkirk's email address"; that "Shattenkirk entered his unique password to login"; and that to accept the agreement, "Shattenkirk was required to type in the last five digits of his social security number, which he did on May 10, 2017 at 7:51 a.m."  *Id.*  The court held that the trial court erred in not holding an evidentiary hearing because the affidavit, although requiring personal and unique information, did not rule out the possibility of "unauthorized access" or include a concession from the employee that he had completed part of the onboarding packet.  *Id.*  Because the employee "denied completing any employment documentation electronically, averring that he manually completed the employment agreements," the court had to resolve whether Shattenkirk in fact signed the arbitration agreement after an evidentiary hearing.  *Id.* at 521.

Similarly in *Brown v. Child Advocates Inc.*, the court of appeals required an evidentiary hearing on the motion to compel arbitration even though the employee could only have signed the arbitration agreement with a "unique password and username."  ___ S.W.3d ___, 2025 WL 1107095, at *2 (Tex. App.—Houston [14th Dist.] 2025, pet. filed).  The court ruled that the employer's affidavit fell short because it did not require "personal identifying information," identify "security procedures that would prevent unauthorized access by users other than Brown," corroborate "Brown's unique password and username," or conclusively demonstrate that Brown

8

completed some other part of the orientation packet that included the arbitration agreement. *Id.* at *3. The court acknowledged that a failure to "recall" whether one signed an arbitration agreement does not create a genuine factual dispute. *Id.* But because "Brown averred that she never intended to enter into a binding arbitration agreement, did not remember ever signing an arbitration agreement, and could not even confirm whether that was her signature on the arbitration agreement," the trial court erred in granting the motion to compel arbitration without an evidentiary hearing. *Id.*

Cases granting motions to compel arbitration offer some guidance on the information that a moving party's supporting affidavit must include. In *Solcius, LLC v. Meraz*, the moving party's affidavit explained that the loan agreement was sent through DocuSign's secure processes to Meraz's personal email address, which only Meraz could access. No. 08-22-00146-CV, 2023 WL 2261414, at *7 (Tex. App.—El Paso Feb. 27, 2023, no pet.) (mem. op.). In *H-E-B, LP v. Saenz*, Saenz signed the arbitration agreement through a process that "assigned a unique identification number and password" that could "only be accessed by a link in the email sent to the email address provided by the applicant in the initial application." No. 01-2000850-CV, 2021 WL 4733460, at *6 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, pet. denied) (mem. op.). The key from *Meraz* and *Saenz* is that the electronic signature was backed by some "unique, secret credentials" that no officer, agent, servant, or employee of the moving party could access. *Id.*

The strength of the security measures in *Saenz* and *Meraz* are potentially distinguishable from those in *Shattenkirk* and *Brown*, although only on speculative and fanciful grounds. In *Shattenkirk*, an AutoNation agent perhaps could have accessed Shattenkirk's social-security number through his employment files and used it to sign the arbitration agreement on his behalf. The facts did not show that the documents were sent to Shattenkirk's personal email that only he

9

could access. Similarly in *Brown*, an agent of the employer perhaps could have found Brown's unique password and username in the company's files and used them to sign the arbitration agreement on his behalf. By contrast, in *Meraz*, there was no possible way for anyone but Meraz to log into his own email account, click on the DocuSign link, and then sign the disputed contracts. *Saenz* is no different, because all the relevant onboarding documents were sent to Saenz's personal email. In *Sanez* and *Meraz*, the moving party did not possess the information or means needed to fabricate the electronic signature.

The case law suggests the following framework for evaluating cases in which a party relies on security measures to establish the validity of an electronic signature. The court first must assess whether the moving party ruled out the possibility that anyone but the opposing party signed the arbitration agreement, such as through the use "unique, secret credentials" that no agent of the moving party could have possibly accessed. If the moving party does not provide such evidence— but instead offers only an employee who "vouches for the authenticity of an agreement purportedly signed by the plaintiff as a business record," *Hendrix v. Allstate Ins. Co.*, No. 4:25-CV-00698-P-BP, 2026 WL 942672, at *3 (N.D. Tex. Mar. 18, 2026) (cleaned up)—then only "legally sufficient," not legally conclusive, evidence is in the record, *Shattenkirk*, 693 S.W.3d at 519. The court next must evaluate "any contravening evidence from" from the opposing party. *Id.* If the opposing party states that he or she does not "recall" signing the arbitration agreement, then the court can compel arbitration. *See Brown*, 2025 WL 1107095, at *3; *Hendrix*, 2026 WL 942672, at *4. But if the opposing party avers that he or she "never intended to enter into a binding arbitration agreement," *Brown*, 2025 WL 1107095, at *3, or outright denies completing the arbitration agreement or related employment documents, *see Shattenkirk*, 693 S.W.3d at 521, then the court must resolve the material factual dispute after an evidentiary (or *Shattenkirk*) hearing.

10

Under this framework, Niagara has not yet provided a sufficiently detailed affidavit to warrant granting the motion to compel arbitration.  Niagara provided a declaration from Dilini Wijetilleke, the Director of HR Optimization & Technology.  (Docket Entry No. 18-1).  He affirmed that Madison signed the arbitration agreement through Workday, its centralized system for distributing documents, which employees can only access through "unique credentials assigned to that employee."  (*Id.* ¶¶ 5–7).  Wijetilleke then offered details showing that the signature on the arbitration agreement was entered from an I.P. address that Madison consistently used in the course of his employment.  (*Id.* ¶¶ 9–29).  Madison disputes Wijetilleke's affidavit.  He asserts that to the best of his recollection he "did not receive a DocuSign link, an email containing an arbitration agreement, or any electronic notification asking [him] to review and sign an arbitration agreement at any time during [his] employment."  (Docket Entry No. 15-1 ¶ 7).  He further affirms that he did not intend to agree to arbitrate and "would have sought the advice of an attorney before signing" such an agreement.  (*Id.* ¶ 17).  Madison also argues that the I.P. address could have been common to the Missouri City plant at which he worked, not specific to him.  (Docket Entry No. 19 at 12–13).  Madison's affidavit creates a genuine dispute of material fact on the validity of the electronic signature.

Madison denies signing the arbitration agreement, and Wijetilleke's affidavit, although highly persuasive, is not legally conclusive evidence under Texas law.  Wijetilleke's affidavit does not show that Madison's unique credentials are also secret, such that no Niagara employee possibly had the ability to sign the arbitration agreement on Madison's behalf.  *Saenz*, 2021 WL 4733460, at *6.  This is an issue the court must resolve through a *Shattenkirk* hearing.  But because the court is denying the motion to compel without prejudice, and requiring Madison to amend his sexual-

11

harassment claims, the court will grant Niagara leave to submit a new affidavit in a renewed motion that can establish the facts necessary to compel arbitration as a matter of law.

Lastly, Madison seeks discovery into whether he signed the arbitration agreement. The court denies his request. The Federal Arbitration Act requires "an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). As a result, "courts have generally denied arbitration-related discovery absent a compelling showing that such discovery is required." *Hudson v. Windows USA, LLC*, No. 3:16CV596-DPJ-FKB, 2016 WL 8135875 (S.D. Miss. Nov. 3, 2016) (citing *Bell v. Koch Foods of Miss., LLC*, No. 3:08cv697-WHB-LRA, 2009 WL 1259054, at *3 (S.D. Miss. May 5, 2009)), *aff'd*, 358 Fed. App'x. 498 (5th Cir. 2009)). Although legally insufficient to compel arbitration on the papers under Texas law, Niagara's affidavit is highly persuasive. The court does not need to grant discovery that amounts to a fishing expedition. *See Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010) ("The court need not allow a plaintiff to conduct a jurisdictional fishing expedition seeking facts to support a claim of general jurisdiction."). There is little reason to believe that anyone other than Madison signed the arbitration agreement. Madison will have the opportunity to make his case and examine Niagara's witnesses if a *Shattenkirk* hearing is ultimately necessary. But even limited discovery is not prudent at this stage in the litigation.

## II.     Conclusion

For these reasons, the motion to compel arbitration, (Docket Entry No. 12), is denied without prejudice. The motion for leave to file a sur-reply, (Docket Entry No. 20), is granted. The plaintiff must amend his complaint by May 1, 2026; the defendant may renew its motion to compel

arbitration; and the court will schedule a *Shattenkirk* hearing on the motion to compel arbitration

if necessary.

SIGNED on April 15, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge