United States District Court
Southern District of Texas
**ENTERED**
August 04, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CURTIS MADISON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-5701 |
| | § | |
| NIAGARA BOTTLING, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Curtis Madison has moved to compel production of an internal-investigation memorandum created by Niagara Bottling, LLC in response to Madison's EEOC charge against the company. (Docket Entry No. 33). Madison sought the memorandum based on Niagara's use of the investigation results in the position statement it filed with the EEOC:

> When Niagara was first made aware of Mr. Madison's allegations through his Charge, Regional HR Manager Pam Collins ("Ms. Collins") immediately launched a neutral and impartial investigation in good faith to assess his claims. The investigation consisted of witness interviews of the subjects identified in Mr. Madison's Charge—Mr. Morris, Mr. Pollard, Adrian Espinoza ("Mr. Espinoza"), Mr. Flanigan, and Mr. Lauderdale—as well as a review of relevant Company records.
>
> The investigation findings revealed that the team participated collectively in making lighthearted jokes about one another. Mr. Madison made jokes reflecting personal traits about others, including their skin tone, weight, physical appearance, etc. and other team members made similar jokes about him.
>
> As to Mr. Madison's sexual orientation, subject witnesses consistently reported that they only knew him to date women. They were aware of his divorce from an African American woman and observed him attending the Company's Christmas party with a Caucasian woman. Additionally, Mr. Madison exclusively discussed relationships with women. Based on their observations and interactions with him, the subject witnesses did not view his claim of being bisexual as credible and were instead surprised at the allegation. Moreover, in proper context, the hot dog emojis had no relation to his sexual orientation and were solely used to emphasize how frequently hot dogs were catered to the

> worksite as a gesture of Company appreciation. For example, at one time, Mr. Madison was placing hot dog stickers on team members' cars. He likewise would often joke saying "forget the hot dogs, I want the juice"—a comment perceived as expressing fatigue over the recurring hot dog menu.
>
> As the witnesses had no knowledge of Mr. Madison's alleged bisexual orientation, they were equally unaware of his alleged HIV status.

(Docket Entry No. 33-3 at 5–6).

Niagara asserts attorney-client privilege and work-product protections. Madison argues that neither protection applies and that Niagara waived those protections by relying on the investigation in its EEOC submission. The court denies Madison's motion to compel production at this time.

First, attorney-client privilege and work-product protections apply to Madison's internal investigation and the related interview notes, witness statements, and closing memorandum. The attorney-client privilege protects (1) "a confidential communication": (2) between a client or client representative and "a lawyer or his subordinate": (3) "for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis omitted). It does not matter that non-lawyers conducted the investigation because "communications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014) (Kavanaugh, J.); *Miniex v. Houston Hous. Auth.*, No. CV 4:17-00624, 2019 WL 2524918, at *4 (S.D. Tex. Mar. 1, 2019).

The work-product doctrine shields "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing of substantial need and an inability to obtain their substantial equivalent without undue hardship. FED. R. CIV.

P. 26(b)(3)(A). Work-product protections extend to "materials used or uncovered during any investigation required to prepare" such documents or tangible things. *Green v. Kroger Co.*, No. 4:20-CV-01328, 2022 WL 1078024, at *1 (S.D. Tex. Apr. 11, 2022).

Under these principles, investigations conducted in response to EEOC charges receive attorney-client privilege and work-product protection. *See, e.g.*, *id.* at *2–3; *Escamilla v. SMS Holdings Corp.*, No. CV 09-2120 (ADM/JSM), 2011 WL 13243580, at *21 (D. Minn. June 28, 2011) (collecting cases), *aff'd*, No. CIV. 09-2120 ADM/JSM, 2011 WL 5025254 (D. Minn. Oct. 21, 2011). Niagara's investigation is not an exception to the trend. Niagara investigated the matter in response to the EEOC charge. (Docket Entry No. 33-3 at 5–6). Niagara did so at the "direction" of Niagara's "Senior Corporate Counsel" to enable her to "assess" Madison's "legal claims, provide legal advice to Niagara, prepare Niagara's response to the EEOC, and advise Niagara regarding anticipated litigation." (Docket Entry No. 34-1 at 2). The court also reviewed the memorandum *in camera*. Though Madison argues that the memorandum was used for making employment decisions, the face of the document shows that Niagara created it primarily for the purpose of litigation.

Second, although Niagara likely waived privilege and work-product protections with respect to the memorandum, the court declines to compel production at this time. "[T]he voluntary disclosure of privileged materials to government investigators generally waives both attorney-client privilege and work-product protection." *Alpert v. Riley*, No. CIV.A. H-04-CV-3774, 2009 WL 1226767, at *11 (S.D. Tex. Apr. 30, 2009). But for work-product protection, waiver is normally "limited to the documents actually disclosed." *SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006). The dispute is not about whether Madison is entitled to what was disclosed to the

EEOC in Niagara's position statement. It is whether Niagara's limited disclosure waived work-product and privilege protections on the entire "subject matter" of its investigation.

Courts in Texas have held that "subject-matter waiver of work product protection should only be found in limited circumstances." *United States v. Rodgers*, No. 4:20-CR-00358, 2022 WL 1074013, at *9 (E.D. Tex. Apr. 8, 2022). These include "where parties have placed their work product at issue or where they have tactically disclosed portions of their work product, and it would be unfair to deny the other party access to the rest." *Id.* (collecting cases). In the context of Title VII cases, defendants place their internal investigations at issue when they plan to rely on the investigation to rebut an element of the plaintiff's claim or establish a substantive defense, such as an *Ellerth/Faragher* defense. *See EEOC v. Nabors Indus., Ltd.*, No. 5-16-CV-00758-FB-RBF, 2018 WL 11195496, at *2–3 (W.D. Tex. Aug. 21, 2018). Because Niagara has not yet answered Madison's complaint, it is unclear whether Niagara will rely on a defense that puts the memorandum at issue. *Cf. Sealy v. Gruntal & Co.*, No. 94Civ.7948 (KTD)(MHD), 1998 WL 698257, at *5 (S.D.N.Y. Oct. 7, 1998) (dropping a defense can remove a basis for waiver).

Niagara tactically disclosed portions of the memorandum to the EEOC, so the ultimate question is whether it would be unfair to deny Madison rest of it. This is a close call. Courts sharply divide on whether to compel disclosure of internal-investigation findings that were partially disclosed to the EEOC. The Southern District of New York, following a line of precedent finding waiver based on disclosures made in presentations to government regulators, ordered the production of similar work product because the defendant's position statement to the EEOC included "numerous disclosures of specific statements purportedly made" by witnesses to the defendant's investigators. *Felder v. Warner Bros. Discovery*, No. 23 CIV. NO. 08487 (AT) (GS), 2025 WL 1718098, at *18 (S.D.N.Y. June 20, 2025) (first citing *Gruss v. Zwirn*, No. 09 CIV. 6441

PGG MHD, 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013); and then citing *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996)). Other courts have rejected "the proposition that a party's inclusion or reference to an internal investigation in EEOC proceedings necessarily waives the privilege" or work-product protections. *Martel v. Computer Scis. Corp.*, No. 17-CV-407-SM, 2019 WL 2030281, at *2 n.2 (D.N.H. May 8, 2019); *Robinson v. Vineyard Vines, LLC*, No. 15CIV4972VBJCM, 2016 WL 845283, at *5 & n.8 (S.D.N.Y. Mar. 4, 2016); *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 146–47 (E.D.N.Y. 1999).

The court finds *Felder* and its reasoning more persuasive as a general matter. But in this case's early posture, the court declines to compel production. This case may well go to arbitration, where the arbitrator will decide what documents Niagara must produce. The arbitrator may conclude that the *Martel* line of cases is more persuasive. Madison moved to compel production of the memorandum before the parties' early-scheduled mediation. Had Madison's right to the memorandum been clear under existing law, the court would have compelled its production to help the parties evaluate the strengths and weaknesses of their case. But Madison's right to the memorandum depends on a close call. The court cannot compel production without intruding on the arbitrator's prerogative over discovery. The court declines to compel production before the court rules on whether this case must go to arbitration.

For these reasons, the motion to compel, (Docket Entry No. 33), is denied.

SIGNED on August 4, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge